IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID D'AMICO, | * |
| *Petitioner*, | * |
| v. | * Criminal No. RWT-10-0777-3 |
| | * Civil No. RWT-17-1308 |
| UNITED STATES OF AMERICA, | * |
| *Respondent*. | * |

## **MEMORANDUM OPINION**

Now pending before the Court is Petitioner's Motion to Vacate and Set Aside Sentence and/or Plea Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"), which asserts claims of ineffective assistance of counsel and other violations of Petitioner's Sixth Amendment rights. *See* ECF No. 1084. For the reasons discussed below, the Court will deny Petitioner's § 2255 Motion.

### I. Background

The background facts of this case, well stated by the Government in its Response in Opposition to Petitioner's § 2255 Motion ("Response"), are as follows:

> Starting in at least 2007,[1] [Petitioner] and co-conspirators imported massive quantities of marijuana from Canada and California and distributed it in Maryland, Pennsylvania, and elsewhere. [Presentence Investigation Report ("PSR")] ¶ 10, ECF No. 1013. [Petitioner's] role in the conspiracy was to, among other things, rent warehouses in Maryland and Pennsylvania for the unloading of the drugs, count drug proceeds at a stash house in Baltimore, and facilitate the purchase, operation, and rental of planes[2] used to transport marijuana and currency. *Id.* [Petitioner] also participated in money laundering and used aliases and false identifications to create shell corporations to hold and hide assets, conduct financial transactions, title vehicles, convert asserts [sic], hide the identity of conspirators, and disguise the nature, source, and control of assets. *Id.* ¶ 16.

---
[1] Petitioner asserts in his Reply to the Government's Response ("Reply") that the correct date is 2008. ECF No. 1105 at 12.
[2] Petitioner states in his Reply that he was only involved in the rental of one plane. ECF No. 1105 at 13.

1

> In March 2009, DEA agents executed a search warrant at a residence in Baltimore that was used as a center of operations for the conspiracy. *Id.* ¶ 12. Agents recovered over 100 pounds of marijuana,[3] $20,000 in U.S. currency, 31 cell phones, documents regarding the purchase of an airplane, money counters, tally sheets with balances over $1.5 million, false identifications, and documents in [Petitioner's] name. *Id.*
>
> Shortly thereafter, [Petitioner] met with other co-conspirators and told them that they needed to destroy their cell phones and flee the country.[4] *Id.* ¶ 13. [Petitioner] then fled to South America, where he remained until his arrest in Colombia in 2013. *Id.* In 2014, he was extradited to the United States based on the charges in this case. . . .
>
> [Petitioner] was originally represented by Steven H. Levin, Esq. [("Mr. Levin")]. Mr. Levin had previously represented another co-conspirator and the Government moved to disqualify Mr. Levin as Defendant's counsel on that basis. *See United States v. D'Amico*, 2014 WL 12668109, at *1–2 (D. Md. Dec. 18, 2014) (Judge Connelly's Report and Recommendation on the motion to disqualify). Judge Connelly recommended that Mr. Levin be disqualified because Mr. Levin faced a conflict of interest if [Petitioner] or the former client decided to cooperate, which would result in Mr. Levin's current and former client having completely adverse interests in the same matter. *Id.* The Court adopted the Report and Recommendation over [Petitioner's] objections. *United States v. D'Amico*, 2015 WL 13105718, at *1 (D. Md. Feb. 19, 2015).
>
> Defendant was thereafter represented by Justin Brown, Esq. [("Mr. Brown")]. All of [Petitioner's] claims of ineffectiveness are directed at Mr. Brown's performance. . . .

ECF No. 1093 at 1–3. On January 13, 2016, Petitioner pleaded guilty to (1) conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. § 846 ("Count One"), and (2) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) ("Count Two"). ECF No. 999 at 1. On May 2, 2016, the Court adopted the PSR recommendation without change and sentenced Petitioner to 120 months imprisonment—the mandatory minimum of 120 months imprisonment imposed as to Count One and 97 months imprisonment as to Count Two to run

---

[3] Petitioner states in his Reply that it was only eighty pounds. ECF No. 1105 at 13.
[4] Petitioner states in his Reply that he did not flee the country, but rather checked to see that his travel was legal before leaving. ECF No. 1105 at 13.

concurrently—five years of supervised release, and a $200 special assessment. ECF No. 1038 at 2–4; ECF No. 1039 at 1. Petitioner did not file a direct appeal.

On May 11, 2017, Petitioner filed his *pro se* § 2255 Motion. ECF No. 1084. On July 26, 2017, the Government filed its Response, ECF No. 1093, and Petitioner filed his Reply on October 18, 2017. ECF No. 1105.

## II. Discussion

To prevail on a § 2255 motion, a petitioner must prove by a preponderance of the evidence that "[his] sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255 (2012); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Collateral attack is not a substitute for direct appeal, therefore the failure to raise certain issues on direct appeal may render them procedurally defaulted on habeas review. *United States v. Frady*, 456 U.S. 152, 165 (1982). If the § 2255 motion, along with the files and records of the case, "conclusively show that [the petitioner] is entitled to no relief," a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255; *Miller*, 261 F.2d at 547. *Pro se* petitions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

Petitioner alleges four grounds for relief pursuant to § 2255. The first three claims assert that Mr. Brown provided ineffective assistance of counsel by failing to (1) investigate for, or

review with Petitioner, exculpatory evidence, (2) correct factual errors in Petitioner's plea agreement, and (3) argue at sentencing for enhanced credit for time served in Colombia. ECF No. 1084 at 2–3. The last claim asserts that the disqualification of Mr. Levin violated Petitioner's Sixth Amendment rights. *Id.* As the Court will discuss below, none of these grounds has legal merit.

A. **Petitioner's Claims of Ineffective Assistance of Counsel Fail Under *Strickland*.**

Courts examine claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the performance prong, a petitioner must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689; *see United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). The alleged deficient performance must be objectively unreasonable and "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The Court must evaluate the conduct at issue from counsel's perspective at the time, and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. "The central question is whether 'an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.'" *United States v. Welch*, 2015 WL 4924887, at *6 (D. Md. Aug. 14, 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

Under the prejudice prong, a petitioner must show that the deficient performance prejudiced the defense, and but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S.

at 687, 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome' of the proceedings." *Welch*, 2015 WL 4924887, at *6 (quoting *Strickland*, 466 U.S. at 694). "[I]n the guilty plea context, a person challenging his conviction must establish 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012) (citation omitted). The court must determine that such a decision "would be rational under the circumstances," and therefore a petitioner's subjective preferences are not dispositive. *Id.* (citations omitted).

A petitioner must meet the requirements under both prongs to prevail. *Strickland*, 466 U.S at 669. "Failure to satisfy either prong is fatal to petitioner's claim." *Welch*, 2015 4924887, at *6.

### 1. *Petitioner's Claim that His Counsel Failed to Investigate Exculpatory Evidence Fails Both* **Strickland** *Prongs.*

Petitioner alleges that his counsel was ineffective for failing to investigate exculpatory evidence. ECF No. 1084 at 2. Petitioner asserts that although he is "unsure of all potential relevant evidence at issue" because his counsel did not "adequately review 'discovery' materials" with him, he learned from co-defendants after his plea about "deficiencies" with the Government's main witnesses, Andrew Sharpeta and Sean Costello. ECF No. 1105 at 11. Specifically, he asserts that he learned that the two witnesses "had apparently succumbed to selfish personal interest and had willingly offered suborned testimony. . . . [and] that these two individuals' testimony was contradictory, unreliable, and not in any way credible." *Id.* He also "learned that there existed multiple defects" in a search warrant which was used to obtain a "significant part of the Government's evidence against" him, and, he asserts, it likely would have been suppressed. *Id.* Therefore, Petitioner claims, his plea was "not knowing, intelligent, and

voluntary" because he would not have pleaded guilty had his counsel investigated for, or reviewed with him, exculpatory evidence. *Id.*

Petitioner's conclusory claim that his counsel was deficient for failure to investigate exculpatory evidence cannot prevail because he does not provide the court with more specific details regarding what the investigation would have revealed, including how the Government's witnesses were not credible or why the search warrant was invalid. Petitioner does not even identify any of the alleged contradictions between the witnesses or their respective testimonies. *See Bassette v. Thompson*, 915 F.2d 932, 94041 (4th Cir. 1990) (rejecting appellant's ineffective assistance claim when he failed to "advise [the court] of what an adequate investigation would have revealed" or to what new witnesses might have testified). In addition, Petitioner states in conclusory fashion that there were "multiple defects" in the search warrant, but fails to show the court what those defects were or how his counsel was deficient for not identifying them and challenging the warrant. Based on these conclusory allegations, there is no way for the Court to conclude that Petitioner's counsel's conduct was in any way deficient. Accordingly, "'vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.'" *United States v. Dyes*, 730 F.3d 354, 359 (4th Cir. 2013) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)).

Moreover, Petitioner has "not offered any evidence to meet [his] burden of proving that but for [his counsel's] failure" to investigate the alleged exculpatory evidence he "would have rejected [his] plea [agreement]" or that it would have been objectively reasonable to do so. *United States v. Thompson*, No. RDB-09-0271, 2012 WL 1405946, at *3 (D. Md. Apr. 20, 2012). Although Petitioner states that he would not have pleaded guilty if he had known about the credibility issues with the two main witnesses, the circumstances of this case show that even

if Petitioner had known of those issues, it would have been objectively unreasonable for Petitioner to reject the plea agreement and proceed to trial. Two of Petitioner's co-defendants did proceed to trial and each received a guilty jury verdict, even after the Government's main witnesses' credibility was called into question through vigorous cross-examination. *See, e.g.*, *United States v. McIntosh*, Case No. RWT 10-cr-0777-14, ECF No. 544, ECF No. 833 at 88-89, 145–47, ECF No. 834 at 59–67, ECF No. 836 at 218–21. After trial, the Court denied both co-defendants' Motions for Judgment of Acquittal and/or Motion for New Trial pursuant to Federal Rule of Criminal Procedure 29 and 33, which in part challenged the credibility of the Government's witnesses, finding that the credibility determination was for the jury to decide, and the Court does "not believe that the verdicts were unsupported by the evidence." *McIntosh*, Case No. RWT 10-cr-0777-14, ECF No. 824 at 41. As the disposition of the co-defendants' motions suggest, Petitioner would not have been able to suppress the witnesses' testimony if he had proceeded to trial, even if he had learned of their allegedly questionable credibility before he entered his guilty plea. Therefore, Petitioner's pretrial circumstances would not have been different, and to forgo the plea and go to trial would still not have been "rational under the circumstances." *Fugit*, 703 F.3d at 260 (citation omitted).

Regarding Petitioner's claim as to the validity of the search warrant, Petitioner fails to assert any specific allegation as to why he believes the search warrant was in fact invalid. Petitioner's conclusory statements are not enough to show that his counsel likely would have been successful if he had challenged the search warrant, and thus he was prejudiced by his counsel's failure to do so. *See Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 524–25 (4th Cir. 2016) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Tice v. Johnson*, 647 F.3d 87, 107-08 (4th Cir. 2011)) (requiring a petitioner to show "that the motion was

meritorious and likely would have been granted" in order to meet the *Strickland* prejudice prong).

Therefore, the Court agrees with the Government that Petitioner's conclusory allegations about his counsel's failure to investigate exculpatory evidence do not meet muster under both *Strickland* prongs, and thus his first claim lacks legal merit. *See* ECF No. 1093 at 7–9.

2. ***Petitioner's Claim that His Counsel Failed to Correct Errors in the Plea Agreement Fails Both* Strickland *Prongs.***

Petitioner alleges that his counsel was ineffective for not correcting factual errors in the plea agreement when Petitioner made them known to counsel, and contends that counsel advised Petitioner to accept the plea with errors and did not tell the Government of the errors. ECF No. 1084 at 3. In his Reply, Petitioner lists the specific factual errors in the plea agreement, which include that he did not flee the United States, but "checked to ascertain that [his] travel was completely legal and unencumbered by any indictment, arrest warrant, or detainer of any type," that "the correct beginning date [of the conspiracy] should be Jan [sic] 2008," that he "never rented a stash house," that the correct weight of marijuana is eighty pounds, not over one hundred, and that he was only "involved with [the rental of] one aircraft." ECF No. 1105 at 12–13. Petitioner contends that he stated at his rearraignment hearing that he was completely satisfied with his representation and the plea agreement itself, even though he was not, because he was "completely worn down and debilitated by [his] post arrest detentions." *Id.* at 13. He further asserts that he would not have pleaded guilty without the errors being corrected "if [he] had been strong enough," and the "errors could have had an effect on both [his] sentencing and possible post sentencing relief programs." *Id.*

First, as the Government points out, Petitioner did make multiple revisions to the plea agreement, a fact that directly contradicts Petitioner's assertion that his counsel did not let

8

Petitioner correct errors, even though the errors alleged by Petitioner were different than those corrected. ECF No. 1093 at 10 (citing Plea Agreement at 2, 7, 10, ECF No. 1093-2, Ex. B). The Court addressed each pen revision made by Petitioner during his Rule 11 colloquy to make sure Petitioner approved of the revisions, and Petitioner swore under oath that he did. ECF No. 1090 at 13–14. Moreover, Petitioner swore under oath that he was satisfied with his counsel's performance and confirmed the same in his plea agreement, and that he read and understood the Statement of Facts attached to the plea agreement. ECF No. 999 at 9; ECF No. 1090 at 6–7. The Government even read aloud the Statement of Facts the parties agreed to, and Petitioner stated under oath that it was "true and correct as far as [he was] concerned." ECF No. 1090 at 29–34. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established" and district courts should "dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Although the Court acknowledges and sympathizes with Petitioner's assertion that he swore under oath to facts that he knew were not true because he "was completely worn down and debilitated by [his] post arrest detentions," ECF No. 1105 at 13, Petitioner's statements under oath "carry a strong presumption of verity," and Petitioner here has failed to meet his burden to overcome that presumption. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Accordingly, Petitioner's second claim fails the first *Strickland* prong.

Even if the Court assumes Petitioner's assertions are true and disregards his sworn statements, Petitioner still cannot demonstrate that, had the facts been corrected, the outcome of his case would have been different. Petitioner fails to state that had his counsel corrected the alleged factual errors, Petitioner would have not pleaded guilty and instead gone to trial. *See*

9

ECF No. 1105 at 13. Instead, Petitioner states that correcting these errors "could have had an effect both on [his] sentencing and possible post sentencing relief programs." *Id.* Moreover, Petitioner pleaded guilty to only two out of the eight counts he was charged with, therefore rejecting the plea and proceeding to trial on all eight counts based solely on the correction of the alleged factual errors above would not have been objectively reasonable. Petitioner would have faced a much higher sentence had he been found guilty by a jury. Petitioner thus fails to establish he was prejudiced by the alleged factual errors in his plea agreement.

Because Petitioner's second claim fails to meet both prongs of the *Strickland* test, it lacks legal merit.

### 3. *Petitioner's Claim that His Counsel Refused to Request Enhanced Credit for Time Served at Sentencing Fails Both* **Strickland** *Prongs.*

Petitioner alleges that his counsel was ineffective for refusing to "argue at sentencing for additional time credit for time served in Colombia on terms of treaty used to extradite [Petitioner] and U.S. case law." ECF No. 1084 at 3. In his Reply, Petitioner includes a signed statement about the terrible conditions of his imprisonment in Colombia, ECF No. 1105 at 2–3, and a lengthy discussion of whether a § 2255 or § 2241 motion is the correct way to seek relief. *Id.* at 3–10. Petitioner claims that "[i]n its [R]esponse, the Government . . . indirectly suggests that the only way [he] can obtain relief" on his claim "for an enhanced jail credit is a § 2241 motion" which the Government knows is a "dead end." *Id.* at 9. Petitioner requests an evidentiary hearing to substantiate his statement with testimony and other evidence, and states that the failure of his counsel to raise this issue was unreasonable and prejudicial. *Id.* at 9–10.

The Court's understanding of the Government's Response does not yield the same understanding as Petitioner's. Instead, the Court understands the Government to assert that under 18 U.S.C. § 3585(b) only the Bureau of Prisons ("BOP"), not the District Court, has the

"sole authority to calculate and grant credit for time served." ECF No. 1093 at 11 (citing *United States v. Wilson*, 503 U.S. 329, 333–34 (1992); *United States v. Stroud*, 584 F. App'x 159, 160 (4th Cir. 2014); *Clayton v. United States*, 2011 WL 1630887, at *4 (D. Md. Apr. 29, 2011)). Accordingly, the Government contends, Petitioner's claim fails both prongs of *Strickland* because counsel's "performance is not deficient for failing to ask the court to do something it [lacks] authority to do" and "there is no possibility that [Petitioner's] sentence would have been different if counsel had made the request." *Id.* at 12 (citing *United States v. Nyhuis*, 211 F.3d 1340, 1345-46 (11th Cir. 2000); *Martel v. United States*, 2017 WL 1289315, at *10 (S.D. Fla. Feb. 27, 2017)).

The Court agrees with the Government. To the extent that Petitioner believes he has not received the appropriate credit for his time served in Colombia, he must first exhaust his administrative remedies through the BOP before seeking judicial review. *Wilson*, 503 U.S. at 335 (citing *United States v. Bayless*, 940 F.2d 300, 304–305 (8th Cir. 1991); *United States v. Flanagan*, 868 F.2d 1544, 1546 (11th Cir. 1989); *United States v. Martinez*, 837 F.2d 861, 865–866 (9th Cir. 1988)). Consequently, "[c]ounsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990). Because the Court lacked the authority under the law to grant Petitioner credit for time served at sentencing, Petitioner's counsel was not ineffective for failing to request time served, and Petitioner was not prejudiced by counsel's failure to do so, thus failing both *Strickland* prongs.[5]

---

[5] The Government does note that "[Petitioner] does not assert that the BOP has failed to give him credit for the time he served in Colombia, and it appears that he may have been given such credit. [Petitioner] was arrested in Colombia in 2013, ECF No. 1013, PSR ¶ 13, and the BOP lists his release date as May 15, 2022, https://www.bop.gov/inmateloc/ (last accessed July 24, 2017). This suggests that [Petitioner] received credit for the time served in Colombia." ECF No. 1093 at 12, n.1.

B.  **Petitioner's Claim that the Disqualification of His Prior Counsel Violates His Sixth Amendment Rights Is Procedurally Defaulted and Lacks Merit.**

Finally, Petitioner contends that the disqualification of his prior counsel, Mr. Levin, violated his Sixth Amendment rights. ECF No. 1084 at 3. Petitioner does not further substantiate this claim in his Reply. *See* ECF No. 1105. The Government responds that this claim is procedurally defaulted and also lacks merit. ECF No. 1093 at 13. The Court agrees.

Because Petitioner did not raise this claim on direct appeal, his claim is procedurally defaulted. In order to raise a claim on collateral attack that could have been raised on direct appeal but was not, Petitioner "must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain a collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *United States v. Maybeck*, 23 F.3d 888-891-92 (4th Cir. 1994)). Even though Petitioner waived his right to appeal in his plea agreement, ECF No. 999 at 3, a "plea agreement that prevents a defendant from appealing is not sufficient cause for his procedural default." *Dorsett v. United States*, No. GLR-16-2741, 2017 WL 2335603 (D. Md. May 30, 2017) (citing *United States v. Jones*, No. 94-6209, 1995 WL 321263 (4th Cir. May 30, 1995)). Here, Petitioner has made no showing of cause or actual prejudice or even asserted a claim of actual innocence. Therefore, Petitioner's claim that his Sixth Amendment rights were violated when his previous counsel was disqualified is procedurally defaulted.

Even if Petitioner's claim was not procedurally defaulted, the claim still lacks merit. In his § 2255 Motion, Petitioner provides no more than a conclusory statement that his rights were violated. ECF No. 1084 at 3. Before the Court disqualified Mr. Levin, however, the issue was vigorously litigated through written motions and oral argument. *See* ECF No. 902;

ECF No. 932; ECF No. 934. Ultimately, Magistrate Judge William Connelly recommended to this Court Mr. Levin's disqualification based on foreseeable problems of potential conflicts of interest. *See United States v. D'Amico*, No. RWT 10-777, 2014 WL 12668109, at *4 (D. Md. Dec. 18, 2014). The Court adopted the Report and Recommendations and accordingly disqualified Mr. Levin as Petitioner's counsel. *United States v. D'Amico*, No. RWT 10cr0777-3, at *1 (D. Md. Feb. 19, 2015). At no time was Petitioner without representation, as he retained his other court-appointed counsel, Richard A. Finci, Esq. and Jennifer A. Mayer, Esq., until Mr. Brown entered his notice of appearance. *See id.*; ECF No. 968. Petitioner provides no reason why the Court should reconsider its decision, and the Court still finds no error in Mr. Levin's disqualification.

Accordingly, Petitioner's claim that his Sixth Amendment rights were violated lack legal merit.

### III. Certificate of Appealability

Petitioner may not appeal this Court's denial of relief under § 2255 unless it issues a certificate of appealability. *United States v. Hardy*, 227 F. App'x 272, 273 (4th Cir. 2007). A certificate of appealability will not issue unless Petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2012); *Hardy*, 227 F. App'x at 273. "A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable." *United States v. Riley*, 322 F. App'x 296, 297 (4th Cir. 2009).

This Court has assessed the claims in Petitioner's § 2255 Motion on the merits and found them deficient. No reasonable jurist could find merit in any of Petitioner's claims, and thus no certificate of appealability shall issue.

## IV. Conclusion

For the reasons discussed above, Petitioner's § 2255 Motion and Motion to Amend will be denied and no certificate of appealability shall issue. A separate order will follow.


DATE: August 2, 2018                                /s/
                                     ROGER W. TITUS
                                     UNITED STATES DISTRICT JUDGE